# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEA ANN LUNDGREN,<br><br>                       Plaintiff,<br>  vs.<br><br>MICHAEL J. ASTRUE, Commissioner of Social Security,<br><br>                       Defendant. | CASE NO. 11cv1793-LAB (MDD)<br><br>**ORDER ADOPTING REPORT AND RECOMMENDATION** |

## I.     Introduction

Lundgren challenges the denial of her claim for disability benefits under the Social Security Act. The challenge was referred to Magistrate Judge Dembin for a Report and Recommendation pursuant to 28 U.S.C. § 636, after which Lundgren and the Commissioner filed cross-motions for summary judgment. Judge Dembin issued his R&R on August 2, 2012, finding for the Commissioner. Lundgren then filed an objection to the R&R.

The Court reviews an R&R on dispositive motions pursuant to Fed. R. Civ. P. 72(b). Rule 72(b) "makes it clear that the district judge must review the magistrate judge's findings and recommendations de novo *if objection is made*, but not otherwise." *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc).

## II.    Legal Standards

To qualify for disability benefits, Lundgren has to establish that she is unable to

engage in substantial gainful activity due to a medically determinable physical or mental impairment. 42 U.S.C. § 1382c(a)(3)(A). She will be considered disabled only if

> her physical or mental impairment or impairments are of such severity that she is not only unable to do his previous work, but cannot, considering her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which she lives, or whether a specific job vacancy exists for her, or whether she would be hired if she applied for work.

42 U.S.C. § 1382c(a)(3)(B). Lundgren bears the burden of proof that she is in fact disabled. *Valentine v. Commissioner, Social Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009). The Commissioner bears the burden, though, of showing that Lundgren is still able to work. *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007).

There is a five-step, sequential evaluation process for determining whether Lundgren is disabled. First, she must not be engaged in substantial gainful activity. Second, her alleged impairment must be sufficiently severe to limit her ability to work. Third, her impairment must meet or equal an impairment listed in 20 C.F.R. § 404. Fourth, she cannot possess the residual functional capacity ("RFC") to perform her past work. Fifth, her RFC, considered with her age, education, and work experience, must be insufficient to allow her to adjust to other work in the national economy. *Stout v. Commissioner, Social Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006).

The Court will uphold a denial of benefits so long as it is supported by substantial evidence and not based on legal error. *Parra*, 481 F.3d at 746. "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* It is not a *preponderance* of the evidence, but it is more than a mere scintilla. *Sandqathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997). "Where the evidence can reasonably support either affirming or reversing the decision," the Court may not substitute its judgment for that of the Commissioner. *Id.*

### III. Discussion

Lundgren initially challenged the ALJ's denial of disability benefits on two grounds. First, she argued that he improperly rejected the opinions of her treating physicians.

(Lundgren MSJ at 9.) Second, she took issue with the ALJ's finding that her own testimony was not credible, or at least of diminished credibility. (*Id.* at 11.) The R&R rejects both arguments, and in her objection to the R&R she pursues only the first. Not only that, but she only pursues the first with respect to one of the three treating physicians, which means that the Court considers only a rather narrow objection to the R&R.

## A.     Factual and Legal Background

It is three opinions that Lundgren initially faulted the ALJ for overlooking—those of Dr. Rome, Nurse Siridakis, and Counselor O'Conner. The ALJ looked at each and determined not to give them significant weight. The R&R finds no problem with this, and now Lundgren challenges only the ALJ's treatment of Dr. Rome's opinion.

The law with respect to the opinions of treating physicians is very straightforward. As a general rule, a treating physician's opinion is entitled to substantial weight. *Bray v. Commissioner, Social Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009). An ALJ needn't accept a treating physician's opinion, however, if it "is brief, conclusory, and inadequately supported by clinical findings." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002). Moreover, when evidence in the record contradicts the opinion of a treating physician, the ALJ must present specific and legitimate reasons for discounting that opinion, and those reasons must be supported by substantial evidence. *Bray*, 554 F.3d at 1228. If, however, the opinion of a treating physician is *un*contradicted, it may only be rejected for clear and convincing reasons. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).

The opinion of an examining physician is, in turn, entitled to greater weight than that of a nonexamining physician. *Id*. These opinions, if uncontradicted, can only be rejected for clear and convincing reasons. If they are contradicted, they can be rejected only for specific and legitimate reasons that are supported by substantial evidence in the record. *Id.* at 831. "The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician *or* a treating physician." *Id.*

### 1.     Dr. Rome

Dr. Rome, a psychiatrist, began seeing Lundgren in July 2007. On August 11, 2009 she re-evaluated Lundgren and found that "[d]espite struggling with recurring episodes of depression and mania, in addition to other medical problems related to chronic pancreatitis and dysfunctional uterine bleeding, this patient has been able to care for herself and work in a limited, and intermittent capacity until exacerbation of her anxiety and depression after a sexual attack." (AR at 239.) Dr. Rome submitted a "Mental Health Examination" in which she found Lundgren was depressed and anxious, haggard and fatigued, and impaired in her memory and knowledge. (*Id.* at 240.) She also found impairments in Lundgren's ability to groom herself, cook, clean, manage money, concentrate, sleep, and socialize. (*Id.* at 241.) She diagnosed Lundgren with PTSD and bipolar disorder. (*Id.*)

The ALJ conceded that Dr. Rome found Lundgren to have severe limitations:

> Treating psychiatrist Dr. Rome completed an evaluation form for the Department of Social and Health Services (DSHS) in September 2009, when she assessed marked limitations in the claimant's ability to understand, remember, and follow simple and complex instructions; to learn new tasks; to perform routine tasks; to care for herself; and to maintain appropriate behavior in a work setting. Dr. Rome assessed severe limitations in the claimant's ability to interact appropriately with co-workers, supervisors, and in public contacts; and to respond appropriately to and tolerate the pressures and expectations of a normal work setting.

(AR at 23.) Nonetheless, the ALJ decided not to give Dr. Rome's opinion considerable weight:

> Dr. Rome's opinion is not given considerable weight as to the claimant's longitudinal mental health functioning. The opinion was rendered very soon after the claimant was assaulted. Therefore, while Dr. Rome's observations and assessed limitations were likely relevant for the period of time immediately following the claimant's assault, the record shows those symptoms and limitations did not persist, as evidenced by the medical records discussed above that document stability and unremarkable mental status examination findings. Accordingly, Dr. Rome's assessment is not given significant weight.

(*Id.* at 24.) Considering that Dr. Rome was a treating physician, her opinion may only be rejected for either clear and convincing reasons *or* specific and legitimate reasons supported by substantial evidence in the record, depending on whether it is contradicted. In fact, as the R&R notes, Dr. Rome's opinion was contradicted by other sources—even if the ALJ

simply, and generally, referenced "the medical records discussed above" in rejecting her opinion.

For example, an examining physician, Dr. Hart, concluded that Lundgren could work, even though she'd be best off with minimal numbers of co-workers and minimal interaction with the public. (*Id.* at 266.) The ALJ interpreted Dr. Hart's opinion to suggest that Lundgren's treatment "had been effective in reducing [her] symptoms considerably" and that her "mania symptoms would not significantly interfere with her ability to work." (*Id.* at 21.) Also, other examining physicians, such as Nurse Siridakis, reported that Lundgren's mood was stable and that with medications her mental health conditions were well-controlled apart from temporary stressors. (*Id.* at 21.) The Court is therefore inclined to agree with the R&R's conclusion that the ALJ faced conflicting opinions about the severity of Lundgren's limitations and sensibly resolved them:

> Ultimately, the ALJ based her decision on the finding that portions of Dr. Rome's opinions were contradicted by several physicians and other medical sources, including a source that Plaintiff asks be considered a treating physician, and were not supported by the objective medical evidence of record. These are acceptable reasons for rejecting the testimony of a treating source.

(R&R at 13.) The ALJ identified specific and legitimate reasons that are supported by substantial evidence in the record. (*See id.* at 20–23.)

The problem with Lundgren's objection is that it fails to really focus specifically on the R&R's findings—and loses sight of the Court's standard of review—and instead appears to simply re-argue the evidence. (*See* Obj. to R&R at 2–3.) But the Court can tease out one argument: the ALJ, faced with conflicting medical opinions that created an ambiguity in the record, simply disregarded all of them and supplanted his own opinion. The premise of this argument is that even though there is disagreement in the record about the *severity* of Lundgren's social limitations, there is no disagreement on the more critical point that she is limited in a manner that entitles her to disability benefits:

//

//

> Although the Magistrate correctly concludes that the ALJ was presented with an ambiguity to resolve, the ALJ in the instant case resolved the ambiguity improperly. The Magistrate agrees in his R&R that every physician of record concludes that Ms. Lundgren suffers from at least some level of social/occupational limitations . . . . But, as evidenced by his finding that Ms. Lundgren could "engage in frequent interactions with co-workers, supervisors, and the general public," the ALJ did not resolve an ambiguity among the competent medical opinions on this matter by adopting one opinion, or even a reconciliation of several opinions—he supplanted all competent medical opinion on the point with his own interpretation of medical records. The ALJ is explicit in this regard: he gives "some weight" to the opinions of Dr. Hart and both state agency review physicians [Nurse Siridakis and Counselor O'Connor], but expressly rejects the assessed social limitations of all three, in addition to his complete rejection of all remaining mental health assessments of record, leaving nothing but his own conclusions.

(Obj. to R&R at 5.)

Here is the evidence behind this argument. Dr. Rome found that Lundgren was severely limited in her ability to relate to co-workers, to interact appropriately in public, and to tolerate the pressures of a normal work environment. (AR at 236.) Nurse Siridakis noted moderate limitations in Lundgren's ability to work in coordination with or proximity to others. (*Id.* at 522.) Counselor O'Conner noted the same. (*Id.* at 528.) He also noted only mild limitations in Lundgren's ability to interact with the general public and get along with co-workers or peers "without distracting them or exhibiting behavioral extremes." (*Id.* at 529.) Dr. Hart found that "ideally [Lundgren] would work in a position away from direct contact with the public and with minimal numbers of co-workers in an area that would not provoke feelings of claustrophobia." (*Id.* at 266.) Dr. Clifford diagnosed panic disorder with agoraphobia and concluded that "she should avoid the public and work with a few coworkers only due to her feelings of claustrophobia." (*Id.* at 279, 291.) Finally, Dr. Beatty described Lundgren as someone who "does not go out for fear of getting lost" and cannot go out alone, the implication being that she'd struggle in a work environment that forced her to interact frequently with others and the public. (*Id.* at 309.) Against the above, Lundgren takes issue with the ALJ's conclusion that she "can engage in frequent interaction with co-workers, supervisors, and the general public." (*Id.* at 19.) Even though the medical opinions aren't

unanimous on the extent of her social limitations, she argues, none of them support *that* conclusion. It's worth noting that in her summary judgment brief Lundgren doesn't concede that the medical opinions in the record aren't unanimous on the scope of her social limitations:

> The fact that three treating physicians and three State agency physicians unanimously agree that a claimant suffers a severe impairment should be more than sufficient to settle a point of medicine, but the fact the sole dissenting voice appearing in the record belongs to the ALJ leaves no explanation other than that the ALJ has arrogated to himself the role of medical expert.

(Lundgren SJ Br. at 10–11.)

The Court disagrees with Lundgren. To the extent the medical opinions regarding her social limitations are varied—and the Court finds that they are—there is sufficient variation to allow for the ALJ's conclusion. Moreover, the ALJ indicated that the social limitations identified in Dr. Hart's report were based on Lundgren's own subjective assessment, and he discounted them for that reason. He indicated twice in his decision that Lundgren seemed capable of engaging in "appropriate interpersonal interactions," and he didn't do so in a manner that simply replaced the medical judgment of others with his own. (*See* AR at 23.) Finally, Lundgren's objection to this single finding of the ALJ is hardly an objection to his ultimate conclusion, namely, that her residual functioning capacity allows her to perform past relevant work. (*Id.* at 25.) The work he identified specifically—receptionist, appointment clerk, and companion—wouldn't require extensive public interaction. In any event, the Court has considered Lundgren's objection, the R&R, and the record, and it **OVERRULES** her objection that the ALJ simply interjected his own opinion over that of the medical professionals who either treated or examined her. To the contrary, as the R&R finds, the ALJ confronted a record with conflicting opinion and ambiguous evidence, and taking it all in he undertook to resolve the ambiguity. That's as it should be. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1041–42 (9th Cir. 2008)

//
//

## IV. Conclusion

The Court finds that the ALJ's denial of disability benefits to Lundgren was supported by substantial evidence and not based on legal error. It therefore **ADOPTS** the R&R in its entirety and affirms the denial of benefits.

**IT IS SO ORDERED**.

DATED: September 20, 2012

*Larry A. Burns*

**HONORABLE LARRY ALAN BURNS**
United States District Judge